William STOWERS, Plaintiff,

v.

WELLS' DAIRY, INC., Defendant.

Civil Action No. 97–2019–KHV.

United States District Court,
D. Kansas.

Oct. 1, 1997.

Aaron C. Johnson, David G. Summers, Kansas City, MO, for Plaintiff.

Christopher E. Hoyme, Berens & Tate, P.C., Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

### Introduction

Plaintiff William Stowers brought this action against his former employer, Wells' Dairy, Inc. [Wells'], claiming that it discharged him on the basis of race in violation of 42 U.S.C. § 1981[1] and Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e *et seq.* as amended, and in retaliation for complaining about racial harassment in the workplace. This matter comes before the Court on *Defendant's Motion for Summary Judgment* (Doc. # 28) filed August 29, 1997. For reasons stated more fully below, the Court finds that defendant has not met its burden for judgment as a matter of law and that its motion must therefore be denied.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Federal R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. at 2512.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Securities Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. at 2512. Ever mindful of these summary judgment standards, the Court now turns to the merits of. defendant's motion.

### Facts

Plaintiff, who is an African American, started work at Wells' on March 4, 1996. He

---

1. Plaintiff cites to 29 U.S.C. § 1981 in his Brief in Support of Motion for Summary Judgment (Doc. # 29). The court assumes that plaintiff means to cite to 42 U.S.C. § 1981.

worked the night shift, which ran from 4:30 p.m. to 3:00 a.m. Plaintiff alleges that he first complained about racial harassment toward the beginning of his employment, and that he later made several complaints of racial harassment to his supervisor, James Streker. Plaintiff indicates that he also complained to his immediate supervisor, Marland Mortenson. Defendant denies that plaintiff ever complained about racial harassment. Rather, defendant insists that plaintiff only complained that other employees did not give him the respect he deserved.

After he completed his shift in the early morning of September 10, 1997, police officers arrested and jailed plaintiff for an outstanding traffic ticket. The arrest and subsequent incarceration should not have occurred, however, because the arrest warrant was improper. The Lansing Police Chief later apologized to plaintiff, and a member of the police department explained to defendant that plaintiff should not have been arrested. From the jail, however, plaintiff asked his girlfriend, Paula King, to pick up his car and tell his supervisor that he would not be going to work for a few days. King spoke with Streker. According to Streker, he told King that plaintiff needed to call him personally. King has no recollection of any such statement. After posting bond at 2:00 p.m. on September 10, 1997, plaintiff was released from jail.

Plaintiff did not personally call Streker to give notice of his absence on September 10 or 11, 1997. Plaintiff admits that defendant's employee handbook requires an employee to notify his immediate supervisor if he is going to be absent from work for any reason. Under the policy, notification should be in advance of the employee's scheduled starting time, and must include the reason for his absence and the date he will return to work. The handbook states that unexcused absences are not allowed, and that the very first unexcused absence can result in discharge.

Plaintiff asserts that he did not read and was unaware of the policies set out in the handbook. Defendant disputes this fact. Further, plaintiff points to language in the handbook which indicates that if the employee is unable to report his absence personally, someone other than the employee should inform the company. Plaintiff believes that he complied with this policy by having his girlfriend notify defendant that he would not be at work for a few days.

Defendant alleges that it terminated plaintiff's employment because of plaintiff's two unexcused absences and on account of his poor work performance. Plaintiff responds that defendant decided that his absences were unexcused before it talked with him to find out why he did not call in, and that his performance was not a reason for his termination.

### Analysis

 Plaintiff offers no direct evidence that defendant discriminated against him on the basis of race. Rather, plaintiff relies on circumstantial evidence to prove discriminatory intent. Where, as here, there is inadequate direct evidence of discrimination (e.g., oral or written statements by defendant showing a discriminatory motivation), the Tenth Circuit adopts the three-step burden-shifting scheme originally set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green.*[2] *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529–30 (10th Cir. 1995) (citing *McDonnell Douglas,* 411 U.S. 792, 801–05, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981)).

Under the *McDonnell Douglas* format, plaintiff has the initial burden of establishing a prima facie case of discrimination. Once plaintiff establishes a prima facie case, the burden of proof shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995) ("In the context of employment discrimination cases analyzed pursuant to the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. Once this is done, the employer must offer a facially nondiscrimina-

---

**2.** The elements of plaintiff's case and the allocation of burdens are the same under Title VII and Section 1981. *See Thomas v. Denny's Inc.,* 111 F.3d 1506, 1509–10 (10th Cir.1997).

tory reason for its employment decision"). If the employer meets its burden of showing a nondiscriminatory reason for plaintiff's termination, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to demonstrate by a preponderance of the evidence that the employer's proffered reason for the challenged action is a mere pretext for race discrimination—that is, that it is unworthy of belief. *Randle,* 69 F.3d at 451.

■ Plaintiff may successfully oppose summary judgment by demonstrating weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action, such that a reasonable factfinder could find the reasons unworthy of credence and infer that the employer did not act for those asserted legitimate, nondiscriminatory reasons. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). Mere conjecture that the employer's explanation is a pretext for intentional discrimination, however, is not enough to overcome a motion for summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). On the other hand, if plaintiff can produce evidence of pretext, defendant's motion for summary judgment must fail. *Garcia–Harding v. Bank Midwest, N.A.,* 964 F.Supp. 1492, 1507 (D.Kan. 1997) (citing *Jones v. Unisys Corp.,* 54 F.3d 624, 630 (10th Cir.1995) and *Durham v. Xerox Corp.,* 18 F.3d 836, 839–40 (10th Cir.), cert. denied, 513 U.S. 819, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994)).

■ A plaintiff may establish a prima facie case of disparate treatment by showing (1) that he is a member of a protected class; (2) that he was discharged for violating a work rule; and (3) that similarly situated non-minority employees were treated differently. *EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citing *McAlester v. United Air Lines,* 851 F.2d 1249, 1260 (10th Cir.1988)). When comparing the rela-

tive treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; the violations need only be of "comparable seriousness." *Id.* (citing *McAlester,* 851 F.2d at 1261).

■ There is no dispute that plaintiff satisfies the first two elements: he is a member of a protected class and defendant discharged him. The issue is whether defendant treated similarly situated employees who are not members of plaintiff's race differently from plaintiff. For reasons stated below, the Court concludes that genuine issues of material fact preclude the Court from determining as a matter of law that plaintiff has failed to establish this element of his prima facie case. Moreover, genuine issues of material fact preclude the Court from deciding as a matter of law that defendant had a legitimate, nondiscriminatory reason for terminating plaintiff's employment.

■ Defendant claims that it discharged plaintiff because he incurred two unexcused absences. Absenteeism is a legitimate, nondiscriminatory reason for termination. *Thompson v. Rockwell Int'l Corp.,* 811 F.2d 1345 (10th Cir.1987) (plaintiff terminated for excessive absences and insubordination); *Mitchell v. Safeway Stores, Inc.,* 624 F.Supp. 932 (D.Kan.1985). Plaintiff's strongest argument for pretext in this case is this: despite defendant's claim that it discharged plaintiff for two unexcused absences, defendant did not fire white employees after two unexcused absences. In other words, defendant treated similarly situated non-minority employees differently from plaintiff. For example, plaintiff points to the testimony of Michael Ellis, Well's Vice President of Human Resources, who stated that one white employee, Marv Cline, had not been fired after two unexcused absences (he was fired, however, after his *third* unexcused absence). Similarly, the record indicates that at least one other white employee was apparently discharged only after more than two unexcused absences.[3]

---

**3.** In his affidavit of September 24, 1997, Ellis states:

> The following Caucasian individuals' employment with Wells' Dairy was terminated because each had accumulated two *or more* unex-

cused absences in a 12–month period: Eugene Snider [and] Mary Jo Schilmoeller.

(Emphasis added). Compare this with the deposition of James Streker, plaintiff's supervisor, who stated that Snider was discharged for two unexcused absences. In light of the testimony of

The record reveals a genuine issue of material fact whether defendant treated plaintiff differently than similarly situated employees who are not members of plaintiff's protected class. Defendant discharged plaintiff for *two* unexcused absences. Plaintiff is black. Defendant did not discharge Cline after two unexcused absences; likewise, defendant did not discharge Schilmoeller after two unexcused absences. Both of these employees are white. The fact that defendant discharged Snider after two unexcused absences would tend to rebut plaintiff's claim of pretext. Nevertheless, in light of the conflicting testimony regarding defendant's treatment of similarly situated and non-similarly situated white employees, there remain unresolved disputed issues of material fact, which should be submitted to the jury.[4]

Plaintiff has produced evidence of pretext and neither the conflicting testimony of defendant's agents,[5] nor its attendance records, is sufficiently clear or undisputed to rebut that evidence. It remains unclear whether defendant's stated reason for firing plaintiff—that he incurred two unexcused absences—is a legitimate one, rather than mere pretext. Were the relevant facts more discernible, the Court could determine whether similarly situated white employees received the same treatment as plaintiff; that is, whether they too were discharged after only *two* unexcused absences (instead of three or more). Given the insufficiency of, and lack of clarity surrounding, these relevant material facts, the Court cannot properly conclude that defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* (Doc. # 28) be and hereby is **DENIED**.

---

both Ellis and Streker, it appears that Schilmoeller may have been discharged for *more* than two unexcused absences.

**4.** Moreover, the dispute regarding whether defendant's past performance was also a factor leading to his discharge makes this issue even more difficult to determine as a matter of law.

**5.** For example, whereas Streker testified that Robert Hodges, another black employee, failed to report his absence to his supervisor for *one* day, Ellis testified that Hodges failed to report for *four* days.