Esther R. VALDIVIA, Plaintiff,

v.

UNIVERSITY OF KANSAS MEDICAL CENTER, Defendant.

Civil Action No. 97–2097–KHV.

United States District Court,
D. Kansas.

Oct. 7, 1998.

Denise E. Farris, Farris Law Firm, Kansas City, MO, Samuel I. McHenry, Legal Aid of Western Missouri, Kansas City, MO, for Plaintiff.

Lisa Leslie, John C. McFadden, Kansas University Medical Center, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendant's *Motion For Summary Judgment* (Doc. # 56) filed August 19, 1998. Plaintiff, a former employee of defendant University of Kansas Medical Center ("KUMC"), brings this action under 42 U.S.C. § 2000e *et seq.* (Title VII) and 29 U.S.C. § 621 *et seq.* (the Age Discrimination in Employment Act) alleging that defendant subjected her to a hostile work environment and terminated her employment based on age, race, and national origin.[1] For the reasons stated below, the Court finds that defendant is entitled to summary judgment on plaintiff's claims of disparate treatment regarding discipline, training and promotional opportunities, evaluations and termination of employment, and that defendant's motion should therefore be sustained.[2]

### Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Midland Brake, Inc.,* 138

---

1. Plaintiff's complaint also alleged sex discrimination, but the pretrial order only includes claims of discrimination based on age, race and national origin. *See Pretrial Order* (Doc. # 53) filed August 7, 1998. Further, *Plaintiff's Response Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 58), filed September 8, 1998, raises no claim of sex discrimination. In her deposition, plaintiff conceded that she does not believe that her termination was based on gender. *See* Defendant's Ex. 37, p. 25-27. The Court therefore finds that plaintiff has abandoned any sex discrimination claim.

2. Perhaps understandably, defendant's motion does not seek summary judgment on any theory that it maintained a hostile work environment based on age, race or national origin. The pretrial order is ambiguous, see *Pretrial Order* (Doc. # 53) filed August 7, 1998, and the Court cannot clearly ascertain whether plaintiff is attempting to assert such a claim. Plaintiff's factual contentions in the pretrial order suggest that she is, but the identified factual issues do not include any such claim. Further confusing the issue, *Plaintiff's Response Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc # 58) filed September 8, 1998, includes as a material fact in dispute: "Was plaintiff Valdivia subjected to a discriminatory hostile environment on the job because of age, race and/or national origin?" Plaintiff's Response, however, then fails to address a hostile work environment claim. Until this matter is clarified, the Court cannot presume to enter judgment in defendant's favor on all claims.

F.3d 1304, 1307 (10th Cir.1998). The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

In considering a summary motion the Court must view the evidence in the light most favorable to the nonmoving party. *Tom v. First Am. Credit Union,* 151 F.3d 1289, 1291 (10th Cir.1998). Summary judgment may be granted, however, if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. Thus, " [w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### Factual Background

The following material facts are undisputed, or where disputed, viewed in the light most favorable to plaintiff.

Plaintiff is a Hispanic Mexican–American female. She began working at the KUMC School of Nursing as a Clerk Typist II on May 13, 1986, and throughout her employment, she held various classified civil service positions there. Defendant's Ex. 1. On June 30, 1995, when plaintiff was more than 60 years old, defendant discharged her from her position as Office Assistant II. *See* Defendant's Ex. 20; Plaintiff's Ex.1, plaintiff's depo. p. 56.

Civil service employees at KUMC receive periodic performance evaluations which are completed by the employee's supervisor and reviewed by the department director. *See* Defendant's Ex. 2, 40. The performance evaluations include points that are totaled for an overall rating of 0 to 500. Zero to 250 points is "unsatisfactory," 251 to 450 points is "satisfactory," and 451 to 500 points is "exceptional." Defendant's Ex. 2. The employer may dismiss a classified civil service employee who receives two consecutive unsatisfactory performance evaluations. *See* Kan. Admin. Reg. 1–7–10(b); Kan. Stat. Ann. § 75–2949e.

Hester Thurston, plaintiff's first supervisor, evaluated her performance in November, 1986. Thurston awarded plaintiff 270 points and noted that although she "accepts interruptions of her work, these interruptions prevent efficiency." Defendant's Ex. 4. When Thurston evaluated plaintiff's performance eight months later, in July, 1987, she assigned plaintiff 300 points and characterized her work as "marginally satisfactory." Defendant's Ex. 5.

In December 1987 Dr. Helen Connors, plaintiff's new supervisor, rated her performance "satisfactory" based on a point total of 300. Defendant's Ex. 6. In January 1989 and October 1989 Dr. Connors again rated plaintiff's performance as "satisfactory," with point totals of 300. Defendant's Ex. 7, 8. In December 1990, another new supervisor, Barbara Goodwin, evaluated plaintiff's performance and awarded her 300 points for a "satisfactory" rating. Defendant's Ex. 9.

In November 1991 Patricia Walters, another new supervisor, awarded plaintiff 470 points—an "exceptional" rating. Defendant's Ex. 10. Thirteen months later, however, in December 1992, Walters determined that plaintiff's performance warranted only 300 points. *See* Defendant's Ex 11. On January 27, 1993, Walters warned plaintiff that being consistently late for work was unacceptable. Defendant's Ex. 12. On February 4, 1993, Walters wrote a memo to plaintiff about her habitual use of leave time and gave plaintiff a "Report of Employee Guidance/Counseling" for failing to distribute department mail. Defendant's Ex. 14, 15. On December 16, 1993, yet another new supervisor, Marcia Pressly, evaluated plaintiff's job performance at 280 points and expressed concerns about plaintiff's performance. Defendant's Ex. 16.

On January 14, 1994, School of Nursing Administrative Officer George Gunderson informed plaintiff that effective January 18, 1994, she would be transferred from the Of-

fice of the Dean to the Office of Academic Affairs (still within the School of Nursing), and that Doris Merrill would supervise her work. Defendant's Ex. 17.

Shortly after the transfer, although KUMC policies prevented Merrill from requiring that selected employees time in and out, she began to scrutinize plaintiff's reporting time. Plaintiff's Ex. 3. Plaintiff testified that Merrill sometimes yelled at her, threw papers on her desk and gave her contradictory instructions. Plaintiff's Ex. 1, plaintiff's Depo. at 47, 52, 67–69. Plaintiff testified that Merrill did not engage in such behavior with other staff members. Id. at 80–85. Also, Merrill did not schedule plaintiff for computer training, although the other secretarial staff members were scheduled for such training.

On August 12, 1994, Eleanor Sullivan, Dean of the School of- Nursing, recommended to Rick Robards, Director of Human Resources, that plaintiff be suspended for misconduct. Defendant's Ex. 18. Sullivan stated that plaintiff had left confidential materials (student evaluations of faculty) unattended in an open room, despite clear instructions to safeguard the materials. See id. Robards advised plaintiff of the recommended disciplinary action and explained her right to review the material supporting the disciplinary action and discuss it with a human resources staff member. Defendant's Ex. 19. After consideration of her appeal, defendant suspended plaintiff for three days without pay. Defendant's Ex. 20.

On December 16, 1994, Merrill met with plaintiff to discuss ongoing problems with her attendance and her failure to safeguard confidential materials.[3] Defendant's Ex. 21. On January 25, 1995, Merrill rated plaintiff's performance as "unsatisfactory," with a point total of 90. She noted that plaintiff had not "met expectations in completing copying in a timely manner," that "efficient completion of duties has not been accomplished," and that "[c]onfidential materials have not been handled appropriately." Defendant's Ex. 22.

Plaintiff did not appeal the evaluation and Merrill scheduled plaintiff for a "special performance evaluation" in five months. Defendant's Ex. 37. In early 1995 Merrill wrote plaintiff several memos about her failure to properly handle confidential faculty evaluations and her photocopying and distribution responsibilities. Defendant's Ex. 23–26.

On May 11, 1995, Merrill completed a special evaluation of plaintiff's performance. The point total on this evaluation was 123, and Merrill indicated that "[s]light improvement has been noted, but overall performance remains unsatisfactory." Defendant's Ex. 27. Plaintiff appealed this evaluation pursuant to Kan. Admin. Reg. 1–7–11. An appeals panel reviewed Merrill's evaluation and raised plaintiff's evaluation score from 123 to 219. See Plaintiff's Ex. 2. The revised score, however, was still in the "unsatisfactory" range.

The Acting Dean of the Nursing School, Rita Clifford, then recommended that KUMC terminate plaintiff's employment based on the two consecutive unsatisfactory evaluations. Defendant's Ex. 30. Plaintiff appealed the proposed dismissal to the Kansas Civil Service Board ("the Board"), pursuant to K.S.A. § 75–2949(f). After a hearing, the Board on November 7, 1995, affirmed plaintiff's dismissal by a three-two vote.[4] Defendant's Ex. 31. Pursuant to K.S.A. § 77–601 et seq., plaintiff appealed the Board's decision, but the Wyandotte County District Court denied that appeal. Defendant's Ex. 32.

On September 8, 1995, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission ("KHRC"), alleging that defendant had discharged her because of age, race, national origin, and ancestry. Defendant's Ex. 33. On September 20, 1995, the Equal Employment Opportunity Commission ("EEOC") notified plaintiff that it had received her KHRC charge and indicated that the basis of discrimination was race and age. The EEOC notice stated that the

---

**3.** On December 22, 1994, Merrill · provided plaintiff a memo which documented that meeting. Defendant's Ex. 21.

**4.** The Board's written decision does not explain why two members dissented from the decision, nor does it contain any indication that defendant mistreated plaintiff on the basis of age, race, national origin, sex, or otherwise. Defendant's Exhibit 31.

circumstances of the alleged violations were that plaintiff was given an unsatisfactory evaluation and had been terminated. Defendant's Ex. 34.

In March, 1996, the KHRC determined that there was no probable cause to credit plaintiff's charge of discrimination. Defendant's Ex. 35. In November, 1996, the EEOC determined that the evidence obtained during its investigation of plaintiff's charge did not establish a violation of federal law. Defendant's Ex. 36.

Before she filed her charges of discrimination with the KHRC and the EEOC, plaintiff never complained that Merrill had discriminated against her on the basis of age, race or national origin. Defendant's Ex. 37. Plaintiff did not identify younger employees who had received unsatisfactory performance evaluations but were not terminated. *See* Defendant's Ex. 37. While plaintiff accuses Gunderson, Connors and Merrill of discrimination based on age, race and national origin, none of them ever made statements to plaintiff regarding her age, race or national origin. Defendant's Ex. 37.

In July 1995 Merrill recommended that KUMC hire a 79–year–old applicant for a temporary position within the School of Nursing. In February 1995, on Merrill's recommendation, KUMC hired a Hispanic woman for a temporary Secretary I position. Defendant's Ex. 38. Nine months after it discharged plaintiff, KUMC hired Juanita Spears, a 37–seven year-old African–American woman, to fill the position. Defendant's Ex. 39; Plaintiff's Ex. 4. When KUMC fired plaintiff, she was the oldest employee whom Merrill supervised.

### Analysis

Plaintiff offers no direct evidence that defendant discriminated against her on the basis of race, national origin or age. Rather, plaintiff relies upon circumstantial evidence to infer discriminatory intent; thus the Court must apply the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Jones v. Unisys Corp.,* 54 F.3d 624, 630 (10th Cir.1995) (noting that Tenth Circuit has adopted *McDonnell Douglas* analysis in ADEA cases).

Under the *McDonnell Douglas* framework, plaintiff first must establish a prima facie case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). If defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination. *Randle,* 69 F.3d at 451. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'" *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). With this burden shifting scheme in mind, the Court now turns to plaintiff's claims of discrimination.

### I. *Discriminatory Discharge Claims*

#### A. *ADEA (Age Discrimination)*

■ To establish a prima facie case of age discrimination plaintiff must show that she was (1) within the protected age group when she was discharged; (2) doing satisfactory work (qualified for the position); (3) discharged; and (4) replaced by a younger person. *Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1312 (10th Cir.1998) (citing *Gonzagowski v. Widnall,* 115 F.3d 744, 749 (1997)).

Plaintiff meets the first and third elements of a prima facie case because she was over 60 years old when KUMC fired her. Plaintiff also meets the fourth element, because KUMC ultimately replaced her with a 37–year–old. This leaves the question whether plaintiff has met her burden to produce evidence of satisfactory work performance. The Tenth Circuit has stated:

> In setting out the evidence that suffices to meet this prong of a plaintiff's prima facie case, we are guided by the practice of this

and other circuits, as well as by the principle that the prima facie case was never intended to be rigid, mechanized, or ritualistic, particularly in an age discrimination case. Accordingly, we conclude that a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time.

941 F.2d 1115, 1121 (10th Cir.1991)(internal quotations and citations omitted).

■ Plaintiff presented evidence that she had held this or similar positions for more than eight years before the unfavorable reviews. She described her work as satisfactory. Thus she has met her burden of showing satisfactory job performance to establish a prima facie case. *See id.* Yet, as the Tenth Circuit has explained,

> ... a plaintiff who succeeds in establishing a prima facie case does not automatically survive a motion for summary judgment. The court must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.

*Id.*

■ Because plaintiff set forth evidence of a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for termination. *Randle,* 69 F.3d 441, 451 (10th Cir.1995). KUMC explains that it terminated plaintiff because of unsatisfactory work performance. Discharging an employee for failure to adequately perform job duties is a legitimate, nondiscriminatory reason. *See Duart v. FMC Wyoming Corp.,* 72 F.3d 117, 120 (10th Cir. 1995). Thus the burden shifts back to plaintiff to show that age was a determining factor in the employment decision. Plaintiff can meet this burden either by demonstrating a genuine issue of material fact as to whether

the proferred reason is pretextual (unworthy of belief), *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994), or by offering direct evidence that age was a determining factor. Plaintiff in this case has done neither.

■ Plaintiff has offered no direct evidence, including statistical evidence or ageist remarks, that suggest that defendant's decision to fire her was based on age. Instead plaintiff argues that defendant's proferred reason was a pretext for age discrimination. She first asserts that Merrill's two performance evaluations, which rated her performance as unsatisfactory, were inaccurate. Plaintiff points out that prior supervisors over an eight-year period each rated her job performance as satisfactory. But a change in management's evaluation of an employee's performance does not by itself raise an inference of pretext. *See Viola v. Philips Medical Systems of North America,* 42 F.3d 712, 717–718 (2d Cir.1994) (rejecting inference of discrimination or pretext from negative performance review after prior reviews were positive). "[S]uch an inference is even less permissible when a new supervisor is appointed, who is entitled to set his own standards and agenda." *Brown v. Time, Inc.,* 1997 WL 231143 (S.D.N.Y. May 7, 1997). Further, although plaintiff's previous evaluations were satisfactory, the point totals (with one exception) were toward the low end of the satisfactory category. Plaintiff's prior supervisors had noted deficiencies in plaintiff's work and the fact that her performance over the years had deteriorated is reflected in negative remarks and lower point totals even before Merrill assumed supervisory responsibility for plaintiff. Plaintiff also relies heavily upon the fact that the internal review panel significantly raised her point score after reviewing Merrill's last evaluation. Even with that adjustment, however, the panel still rated plaintiff's performance as unsatisfactory.[5]

Despite plaintiff's assertion that her performance was satisfactory, "[i]t is the

---

**5.** KUMC produced evidence that plaintiff failed to adequately perform many of her duties. Plaintiff mishandled confidential documents, mishandled mail duties, and failed to timely and accurately complete photocopying assignments.

KUMC followed proper procedures for evaluating and ultimately for terminating a classified civil service employee, and the termination was upheld on appeal.

manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance." *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 987 (10th Cir.1996) (granting JMOL in favor of defendant because ADEA plaintiff failed to show reduction in force was pretextual); *see also Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 747 (10th Cir.1991)("plaintiff's general dispute concerning [ ] job performance, in the absence of any other evidence of age discrimination, does not provide a sufficient basis for a jury to infer that [defendant] terminated plaintiff on the basis of [ ] age."). Further, the fact that the Civil Service Board and state district court upheld plaintiff's dismissal supports the validity of the evaluations.

Plaintiff asserts that other evidence creates a genuine issue of fact as to whether defendant's proferred reason for terminating her was unworthy of belief. Plaintiff testified that Merrill treated her harshly, sometimes yelling at her, and failed to schedule her for computer training. Plaintiff's testimony that her supervisor treated her harshly does not, by itself, create a reasonable inference that defendant discharged her because of age. *See Darnell v. Target Stores*, 16 F.3d 174, 178 (7th Cir.1994) (fact that plaintiff worked under "insufferable boss" does not support finding of discrimination). Merrill's failure to schedule plaintiff for computer training also fails to create an inference of discrimination; plaintiff has produced no evidence that her position required computer training or that such training would have enhanced her performance. Plaintiff also asserts that Merrill scrutinized her punctuality despite a KUMC policy which prevented her from requiring selected individuals to "clock in." Based on plaintiff's documented prob-

lems with tardiness and absences, however, such monitoring does not create an inference of discrimination.

■ Plaintiff also has not pointed to evidence which raises a genuine factual issue about the credibility of defendant's stated motive. Plaintiff's "speculation and feelings that age was the underlying reason" for defendant's decision to discharge her is not sufficient to show that defendant's proferred reason was a pretext. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988). In sum, plaintiff failed to produce evidence on which a reasonable jury could find that defendant discriminated against her on the basis of age. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215–16 (10th Cir.1998) (in race discrimination case defendant offered evidence that it discharged plaintiff due to budget constraints; plaintiff failed to present jury question whether defendant's reason was unworthy of belief).

B. *Race and National Origin Discrimination*

■ Plaintiff asserts that in firing her, KUMC also discriminated on the basis of race and national origin.[6] To establish a prima facie case of employment discrimination on the basis of race, plaintiff must show (1) that she was a member of a protected class; (2) that her job performance was satisfactory; and (3) that defendant terminated her employment under circumstances giving rise to an inference of discrimination.[7] *See Martin v. Nannie & Newborns*, 3 F.3d 1410, 1417 (10th Cir.1993), aff'd, 54 F.3d 788 (10th Cir.1995); *see also Trujillo*, 157 F.3d 1211, 1214–15.

---

**6.** The parties make no distinction between plaintiff's claim of race discrimination and national origin discrimination. Plaintiff has produced evidence that she is Hispanic and that her parents were born in Mexico. Title VII proscribes discrimination on the basis of both race and national origin. In this case the Court analyzes plaintiff's race and national origin claims together because plaintiff's arguments are identical on these claims.

**7.** In *Manning v. Marketing Communications, Inc.*, 1998 WL 596723 (D.Kan. Aug.24, 1998), this

Court noted that the Tenth Circuit has also stated that a prima facie case requires a plaintiff to show that "she is a member of a protected class, was discharged for violating a work rule, and that similarly situated non-minority employees were treated differently." *Id.* at *6 n. 10 (citing *E.E.O.C. v. Flasher Co.* 986 F.2d 1312, 1316 (10th Cir.1992)). "This Court has previously applied the test articulated in *Martin,* because 'similarly situated persons' are not present in every case of discrimination." *Id.*

Plaintiff has shown that she is Hispanic and thus a member of a protected class. For purposes of her prima facie case, for reasons previously stated, plaintiff has presented sufficient evidence that she was qualified for the job. *See MacDonald,* 941 F.2d at 1121 (plaintiff may establish prima facie case of discriminatory discharge by her own testimony that her work was satisfactory, or by evidence that she held position for significant period of time); *Manning,* 1998 WL at * 8 (same). The question is whether plaintiff has produced evidence that defendant terminated her employment under circumstances which give rise to an inference of discrimination.

Plaintiff offers little evidence that other, similarly situated non-class members were treated more favorably. Although she testified that two non-minority employees were allowed to report to work late, without ramifications, she provided no other evidence or documentation concerning those employees. Plaintiff's primary evidence is her own testimony that Merrill yelled at her and treated her more harshly than other employees. Plaintiff did not present any evidence of the performance or performance evaluations of other employees; nor did she produce evidence that other employees who received unsatisfactory performance ratings were not fired.

Plaintiff asserts that Merrill's evaluations of her performance were unfairly low and that the record therefore yields a reasonable inference that her low evaluations were motivated by plaintiff's race. In support of this argument plaintiff points to higher ratings by earlier supervisors. But as discussed above, the prior evaluations indicated that plaintiff's previous supervisors also had concerns about her job performance and that plaintiff's evaluations were low because her performance deteriorated over time.

■ Even if the Court were to find that plaintiff made out a prima facie case of race discrimination, as with the age claim, defendant has offered a legitimate, nondiscriminatory reason for its adverse action. *See Trujillo,* at 1214–15, citing *Burdine,* 450 U.S. at 248, 101 S.Ct. 1089. Defendant produced evidence showing that it properly terminated plaintiff pursuant to the state civil service classified employee procedures. The question then becomes whether plaintiff has of-

fered credible evidence which creates a genuine issue of material fact that defendant's decision to terminate her was unworthy of belief. *See Randle,* 69 F.3d at 451. Plaintiff may successfully oppose summary judgment by demonstrating weaknesses, inconsistencies, or contradictions in the employer's proffered reasons for its action, such that a reasonable fact finder could find the reasons unworthy of credence and infer that the employer did not act for the asserted legitimate, nondiscriminatory reasons. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination, however, is not enough to overcome a motion for summary judgment." *Stowers v. Wells' Dairy, Inc.,* 982 F.Supp. 1441, 1444 (D.Kan.1997) (citing *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988)).

■ As with her age claim, plaintiff has produced no evidence that defendant failed to fire non-minority employees whose work performance was unsatisfactory. *Cf. Stowers,* 982 F.Supp. 1441, 1445 (evidence that defendant discharged black plaintiff for two unexcused absences but did not discharge two white employees for two unexcused absences created issue of fact for jury). Plaintiff's main argument for pretext is her own testimony that Merrill treated her more harshly than any other employees and that her evaluations of plaintiff's performance were falsely depressed. But aside from her own testimony, plaintiff offers no evidence that her performance was satisfactory during the period before KUMC fired her. In *E.E.O.C. v. Flasher Co., Inc.,* the Tenth Circuit held as follows:

Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination based upon an employee's protected class characteristics.

Human relationships are inherently complex. Large employers must deal with a multitude of employment decisions, involving different employees, different supervisors, different time periods, and an incredible array of facts that will inevitably

differ even among seemingly similar situations. The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality.

986 F.2d 1312, 1316 (10th Cir.1992). Based on the record before the Court, plaintiff has failed to offer sufficient evidence that defendant's proferred reasons are pretextual or that defendant's alleged disparate treatment was based on her race. *See Loum v. Houston's Restaurants*, 985 F.Supp. 1315, 1320 (D.Kan.1997) (affidavits that black employees were subjected to verbal and physical abuse by other employees did not indicate treatment was racially motivated; no evidence of actionable disparate treatment).

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 56) filed August 19, 1998, be and hereby is **SUSTAINED**.

**IT IS HEREBY FURTHER ORDERED** that plaintiff on or before **October 14, 1998,** notify the Court whether she believes that she has asserted a hostile work environment claim based on age, race and/or national origin. If so, plaintiff shall also show cause in writing on or before that date why summary judgment on any such claim should not be entered in favor of defendant.[8]

---

8. Because trial is set for November 3, 1998 and the status conference is set for October 15, 1998 at 1:30 p.m., this abbreviated schedule is necessary. The Court also notes that mediation is scheduled for November 2, 1998. If plaintiff does assert a hostile environment claim, the nature and dimensions of that claim should be defined well in advance of that session.