FILED
United States Court of Appeals
Tenth Circuit

April 18, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD A SYDNEY,

        Plaintiff-Appellant,

    v.

CONMED ELECTRICAL SURGERY,
doing business as ASPEN
LABORATORIES, INC., RODNEY
DAVIS, and RON SHORES,

        Defendants-Appellees.

No. 07-1414

(D. of Colo.)

(D.C. No.06-cv-788-REB-MEH)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

Donald A. Sydney brought a lawsuit against his former employer, ConMed

Electrical Surgery, alleging he was fired because of his race in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Civil

Rights Acts of 1866 and 1991, 42 U.S.C. § 1981. Sydney also brought additional

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

claims against supervisors Rodney Davis and Dave Reed and consultant Ron Shores. The district court granted summary judgment in favor of the defendants on all claims. Sydney appeals only the granting of summary judgment to ConMed on the Title VII and § 1981 claims.[1]

We review the district court's judgment pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

ConMed first hired Sydney in 1998 as a service technician and later transferred him to an engineering technician position in 2001. In April 2005, Sydney received a performance review for February 2004 through February 2005. Sydney's former supervisor Alan Lee and his current supervisor Jim Heller presented the review and discussed it with him. Lee supervised Sydney during the period of time covered by the review, and Heller became Sydney's new supervisor in April 2005. The review described unsatisfactory performance in several areas, including productivity, job knowledge and skill, dependability, initiative, and judgment and analytical ability.

---

[1] Although counsel represented Sydney during the district court proceedings, Sydney filed his appeal pro se. While we construe the filings of a pro se litigant liberally, this court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). Therefore, issues not included in the appellant's opening brief are waived. *Hanh Ho Tran v. Trustees of the State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

In response to the review, Heller placed Sydney on a performance improvement plan. Under the plan, Sydney needed to satisfy the following goals:

Productivity—Complete tasks on time
Knowledge—Improve Word and Excel skills
Dependability—Ask questions, seek information, complete tasks
    correctly
Initiative—Contact [supervisor] Rodney Davis when tasks are
    completed or if waiting
Judgment—Understand directions

R., Vol. I., Doc. 38, Exhibit A. After three months, Heller terminated Sydney's employment because Sydney failed to successfully complete the performance improvement plan. Heller described the reasons Sydney's performance did not satisfy the plan's requirements in a July 2005 memorandum addressed to Sydney. During this period, Sydney never complained that any of his supervisors made racially derogatory comments to him.

After his termination, Sydney sued. In the amended complaint at issue here, he alleges the following claims for relief: (1) a Title VII and § 1981 claim alleging ConMed fired him because of his race; (2) a Title VII claim against ConMed alleging retaliation; (3) claims against Davis, Shores, and Reed alleging intentional or negligent infliction of emotional distress, as well as violations of § 1981 and the Equal Protection Clause of the Fourteenth Amendment; and (4) claims against all of the defendants, alleging racial harassment and retaliation.

The district court granted Sydney's unopposed motion to dismiss the second and fourth claims. The court also granted the defendants' motion for

summary judgment on the remainder of the claims. Sydney only appeals the dismissal of the first claim.

## II. Standard of Review

We review the district court's entry of summary judgment de novo. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1310 (10th Cir. 2006). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On appeal, we review the record and make reasonable inferences in the light most favorable to the nonmoving party. *Mickelson*, 460 F.3d at 1310. While we view the record in the light most favorable to the nonmovant, "that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007).

## III. Discussion

Sydney alleges ConMed wrongfully terminated him in violation of Title VII and § 1981. "[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under . . . § 1981 . . . or Title VII." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991). The district court properly evaluated both of Sydney's claims under the *McDonnell*

-4-

*Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802–04 (1973).[2]  Under this framework, the plaintiff must establish a

prima facie case of discrimination.  If the plaintiff does so, the burden shifts to

the defendant to show a legitimate, nondiscriminatory reason for the adverse

action.  If the defendant succeeds, the burden shifts back to the plaintiff to

demonstrate that the defendant's proffered reason is pretextual.  *Antonio v. Sygma*

*Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

## A.  Prima Facie Case

To make out a prima facie case of discrimination under Title VII, the

plaintiff must show (1) membership in a protected class, (2) an adverse

employment action, and (3) disparate treatment among similarly situated

employees.  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

For the purposes of evaluating the summary judgment motion, the lower court

---

[2] In its summary judgment motion, ConMed argued the district court should apply the *McDonnell Douglas* rather than the mixed motive framework when evaluating Sydney's claims.  Sydney did not challenge this argument before the district court.  *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (holding that arguments not raised in the district court are waived on appeal).  Sydney also did not raise this argument in his opening brief.  "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  "[A]rguments not set forth fully in the opening brief are waived."  *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998).  Therefore, it is unnecessary to reach the question of whether Sydney could have instead pursued his claims under the mixed motive framework.

assumed, without deciding, that Sydney satisfied this initial requirement. We likewise make the same assumption. *See, e.g.*, *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997) (assuming without deciding that plaintiff alleging violations of Title VII and § 1981 established a prima facie case).

**B. ConMed's Burden of Production**

The district court properly concluded ConMed satisfied its burden of showing legitimate, nondiscriminatory reasons for its decision to fire Sydney. ConMed submitted to the court the July 2005 performance review memorandum written by Heller and addressed to Sydney. The memorandum lists the following four reasons why Sydney did not satisfy the goals described in his performance improvement plan:

> **[1] 2450 Loan Curve Measurement**—This is a routine task that you have performed before. Some of the open circuit voltage measurements that you presented were transposed. The data did not make sense. There were also two anomalies in the data that you did not check. One of them was a measurement error. Your Dependability and Judgment was not satisfactory because you should have known that these measurements were very irregular and should be checked.

> **[2] System 5000 GFI Trip Investigation**—You were asked to investigate the cause of GFI trip with System 5000 use. This task is a little more complex than those you performed in month one and two, but not as complex as many other tasks performed by Engineering Technicians. You had difficulty understanding the task and did not follow directions. Rodney Davis advised you that the conditions you were testing were not realistic but you continued to test them. Your Productivity, Knowledge, Dependability and Judgment were not satisfactory because you did not conduct realistic tests and failed to change the testing when advised to do so.

-6-

**[3] Alertness**—On July 11 at approximately 1:00PM I observed you at your desk with your head down and eyes closed. You were apparently asleep. When a loud noise occurred you startled and opened your eyes. I had observed this same situation on a previous day. On at least two other occasions, Rodney Davis has observed similar situations. Your Productivity and Dependability were not satisfactory because you are expected to stay awake on the job.

**[4] Following Directions**—The Research and Development Department maintains "V&V" units. These are products that are maintained in factory configuration for test purposes. You were instructed by Rodney Davis not to make any modifications to these units. For the GFI test you modified the System 5000 "V&V" unit. You should have used another unit for that purpose. Your Dependability was unsatisfactory because you did not follow instructions.

R., Vol. I., Doc. 38, Exhibit A. Sydney does not challenge the district court's conclusion that ConMed satisfied its burden of production. The burden therefore shifts back to Sydney to demonstrate that the reasons ConMed proffered for his termination were pretextual.

### C. Pretext

Sydney argues he created a genuine issue of material fact on the question of pretext. In order to establish pretext, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

Because this pretext inquiry is a motive inquiry, the court must examine the facts as they were perceived by Heller—the person who made the decision to terminate Sydney. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004); *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").

We agree with the district court that Sydney failed to produce sufficient evidence to create a genuine issue of material fact regarding whether ConMed's justifications were pretextual.

### 1. 2450 Load Curve Measurements

Sydney insists the "measurements [he] made were <u>accurate</u>. There was a problem with the machine itself, which Ron Shores can attest to." Aplt. Br. 7. Sydney waived this argument because he failed to raise it before the district court. *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (holding that arguments not raised in the district court are waived on appeal). Furthermore, Sydney does not cite anything in the record supporting his claim that Ron Shores agreed that the machine was defective. Therefore, his argument fails to establish pretext.

### 2. System 5000 GFI Trip Investigation

Sydney insists it was not improper for him to ignore Rodney Davis's instructions because Davis was simply a co-worker, and not a superior, at the time

of the GFI trip investigation. Sydney, however, did not dispute Heller's assertion that he improperly conducted the investigation. Therefore, even if Sydney was not required to follow Davis's instructions, he has done nothing to dispute the report that his "Productivity, Knowledge, Dependability and Judgment were not satisfactory because [he] did not conduct realistic tests and failed to change the testing when advised to do so." R., Vol. I., Doc. 38, Exhibit A.

### 3. *Alertness*

Sydney also challenges Heller's assertion that he was asleep during work on multiple occasions. He claims he was on his lunch break when Heller observed him sleeping. On one of the occasions Davis allegedly observed him sleeping, Sydney insists he was actually reading a test procedure. Sydney also claims Davis lied about him sleeping on another occasion in order to get rid of him because he is black.

Even if Sydney's testimony raises factual questions about the allegations of sleeping during work hours, the district court still properly granted ConMed summary judgment. When an employer cites multiple nondiscriminatory reasons for its employment decision, an employee generally "must proffer evidence that shows each of the employer's justifications are pretextual." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). However, if one of the employer's stated reasons for its action predominates the others, "demonstrating that reason to be pretextual is enough to avoid summary judgment." *Bryant v.*

*Farmers Ins. Exch.*, 432 F.3d 1114, 1127 (10th Cir. 2005). Sydney fails to produce sufficient evidence suggesting that the other three legitimate, nondiscriminatory reasons cited by ConMed were pretextual. Furthermore, nothing in the record suggests that Sydney was fired primarily because he slept on the job. Therefore, the district court properly concluded that Sydney's testimony did not create a genuine issue of material fact warranting denial of ConMed's summary judgment motion.

### 4. Following Directions

Sydney also disagrees with Heller's claim that he modified a "V&V" unit despite Davis's instructions not to make any changes. He insists he merely "replaced a part which had to be done when these units malfunctioned." Aplt. Br. 7. Sydney never raised this argument before the district court, and therefore this issue is waived on appeal. *Rosewood Servs., Inc.*, 413 F.3d at 1167 (holding that arguments not raised in the district court are waived on appeal). Furthermore, Sydney does not cite any evidence in the record supporting this claim.

### 5. Other Evidence of Pretext

Sydney makes three additional arguments for why he believes ConMed's justifications are pretextual.

#### a. Davis's alleged racial animus

Sydney argues all four of ConMed's legitimate, nondiscriminatory reasons are pretextual because Rodney Davis had input into the decision to fire Sydney,

and Davis had previously exhibited racial bigotry. Although the July 2005 memorandum refers to complaints made by Davis, Heller also describes his own first-hand observations about Sydney's unsatisfactory performance. Sydney fails to cite anything in the record suggesting that Heller is racially biased or that he conspired with Davis to wrongfully terminate Sydney's job.

The district court also properly concluded Sydney provided inadequate evidence showing that Davis's input had been influenced by racial bias. Sydney cites three reasons why he believes Davis is a racist: 1) Davis listens to Rush Limbaugh on the radio; (2) in December 2004, Davis allegedly once referred to Sydney in a racially derogatory manner; and (3) in 2004, Davis remained silent when consultant Shores hollered out the word "nigger."

Sydney fails to cite any authority for the proposition that listening to a talk show host is evidence of racial bias, nor does Sydney provide any logical explanation for why such a correlation would exist. Furthermore, Davis's isolated remark and "non-reaction" fails to demonstrate pretext. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions."). Sydney in fact never reported the alleged incidents to ConMed's human resource office. Nor did he report these allegations in his EEOC complaint he filed in 2005. In order to establish pretext, "the plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the

-11-

defendant's decision to terminate [him]." *Id.* "A causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff . . . which resulted in the adverse action taken against the plaintiff." *Id.* Nothing in the record suggests the comment Davis allegedly made in 2004 or his failure to respond to Shores' remark caused Sydney's termination in 2005. Therefore, this evidence fails to establish pretext.

### b. Sydney's prior work experience

Sydney also argues he worked at ConMed for seven and a half years, and management had never complained about his job performance until Davis began supervising his work. The mere fact that Sydney's prior performance reviews were satisfactory does not create an inference that Heller or Davis misrepresented his more recent conduct. *Valdivia v. Univ. of Kan. Med. Ctr.*, 24 F. Supp. 2d 1169, 1174 (D. Kan. 1999) (citing *Viola v. Philips Med. Sys.*, 42 F.3d 712, 717–718 (2d Cir. 1994)) ("[A] change in management's evaluation of an employee's performance does not by itself raise an inference of pretext.").

### c. Lack of training

Sydney also alleges he received no training for the more complicated tasks Heller asked him to complete. He failed, however, to produce any evidence suggesting he received less training than other similarly situated employees. In the absence of disparate treatment, evidence of inadequate training does not by itself raise an inference of pretext.

## IV.  Conclusion

In sum, Sydney failed to produce sufficient evidence to create a genuine issue of material fact on the question of pretext.  We therefore AFFIRM the district court's order granting ConMed summary judgment on Sydney's Title VII and § 1981 claims.

Entered for the Court,


Timothy M. Tymkovich
Circuit Judge