**Michaela WATSON, Plaintiff,**

v.

**LUCENT TECHNOLOGIES, INC., Defendant.**

**No. Civ.A.98–2494GTV.**

United States District Court, D. Kansas.

March 3, 2000.

Nancy M. Wilson, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Frank B.W. McCollum, E. John Edwards, III, McCollum, Parks & Wilson, L.C., Kansas City, MO, for Michaela Watson, plaintiff.

Robert J. Hoffman, Bryan Cave LLP, Kansas City, MO, Ellen E Bonacorsi, Bryan Cave LLP, for Lucent Technologies, Inc., defendant.

### MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Plaintiff Michaela Watson brings this action against defendant Lucent Technologies, Inc., alleging racial discrimination, harassment, constructive discharge, and retaliation in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Kansas Act Against Discrimination, K.S.A. § 44–1001 *et seq.* ("KAAD"). Plaintiff, who is African–American, contends that defendant discriminated against her by treating her differently from non-minority employees and harassing her with unwarranted disciplinary actions and racist comments, and retaliated against her for filing complaints of discrimination both within the corporation and with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC"). The case is before the court on defendant's motion for summary judgment (Doc. 52). For the reasons set forth below, the motion is granted. In accordance with the court's decision on defendant's motion for summary judgment and with the court's conclusions of law as set forth in this order, the court denies plaintiff's motion to compel discovery (Doc. 51), and denies as moot defendant's motions for protective order (Doc. 40) and to strike affidavits (Doc. 60).

## I. Factual Background

The following facts are either uncontroverted or are taken from depositions, affidavits, interrogatories, and other documents from the discovery record that were submitted in summary judgment papers, and viewed in a light most favorable to plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff was employed by AT & T Corporation in 1988. Her business unit became a part of defendant's business in 1995. That year, plaintiff began working in defendant's Purchasing Group as a "Buying Associate," stationed at the Merriam, Kansas facility.

Plaintiff worked at the Merriam facility with an individual who was not part of the Purchasing Group named Ed Cronin. Plaintiff testified in deposition that Cronin complained about her to her supervisors from 1996 until her resignation. She claims that Cronin treated non-minority employees more favorably than he treated plaintiff, by being more critical of plaintiff than of non-minority employees, by ignoring her or speaking with her supervisor instead of her, and by not inviting plaintiff to meetings that non-minority employees were invited to. She also claims that Cronin promoted non-minority employees without testing while requiring testing for African–American employees.

In June 1996, one of plaintiff's supervisors informed her that he had received complaints concerning plaintiff's interaction with others at the Merriam facility. In July 1996, plaintiff wrote a memorandum to her supervisors memorializing a meeting in which one of her supervisors, Scott Searls, promised to recommend her for a promotion. Searls sent a copy of the memorandum to another of plaintiff's supervisors and noted that "it continues to be disappointing that M. Watson believes this appropriate. Please document 'all' conversations with her including her behavior and our (you, me & Stan) continued insistence that her attitude toward other members of the Merriam team improve and her acknowledgment that she in fact agrees." Plaintiff was promoted at the end of that month.

Beginning in March 1997, plaintiff reported to Ronda London, whose office was in Denver, Colorado, and her second-level supervisor was M.O. Brinkley, whose office was in Atlanta, Georgia. During March and April 1997, London and Brinkley received complaints from nine Lucent employees regarding plaintiff's negative interaction with those employees. The employees complained that plaintiff was abrasive, rude, or unhelpful, that they felt uncomfortable asking plaintiff questions, and that plaintiff was difficult to deal with.

On April 17, 1997, London and Brinkley met with plaintiff at the Merriam facility. Plaintiff testified in deposition that prior to the meeting, plaintiff asked Brinkley, "Do you take your coffee black or with cream?" and he responded, "Black, because black is beautiful." During the meeting, London

and Brinkley discussed their expectations with her, informed her that several employees had difficulty dealing with her, and told her to improve her relations with her co-workers. Plaintiff told London and Brinkley that she thought the Merriam facility was known for its racial issues, and "that that facility was forced to take minorities in the '60's." Plaintiff testified in deposition that Brinkley responded, "That could possibly be an issue here." Plaintiff also testified in deposition that after the meeting, Brinkley came to her cubicle and "started a discussion about his son" in which he inferred that black athletes took his son's athletic scholarship. He also asked plaintiff if she knew "why black people were black and white people were white." Plaintiff replied, "The only reason why I know is because of the Bible," and he said, "No, it's because black people live closer to the equator." The meeting and subsequent conversation greatly upset plaintiff.

On May 8, 1997, in the middle of a conversation with London, plaintiff said "whatever" and walked away. One week later, on May 15, 1997, plaintiff had a telephone conversation with Brinkley in which he criticized her performance and upbraided her for sending what he interpreted as a disrespectful e-mail to London. According to plaintiff's notes, the conversation was quite contentious. At one point, plaintiff told Brinkley that "the conversation [was] over," and that she was tiring of his and London's harassment. Brinkley responded that if she was experiencing harassment she should hire an attorney. When plaintiff replied that she already had an attorney, Brinkley said, " 'Well if you've contacted an attorney then the conversation is over.' " The next day, London forwarded plaintiff two surveys completed by clients of the Purchasing Group, one of which gave plaintiff unfavorable ratings on "flexibility," "ease of doing business with [the Purchasing Group]," "awareness of [client's] concerns," and "value added of [Purchasing Group] service"; the other survey reported "some friction" between the client and the group.

Around the beginning of June 1997, plaintiff filed an internal discrimination complaint with defendant as well as the EEOC and the KHRC.

On June 12, 1997, London met with plaintiff and informed her that she considered plaintiff's performance over the previous month to be negative and insubordinate, and issued her an official warning in which London cautioned that further incidents of negative or insubordinate action would result in "disciplinary action including but not limited to termination." During the meeting, London also informed plaintiff that she had received complaints from other employees at the Merriam facility that plaintiff had left early on several occasions. Plaintiff disputed the accuracy of the information and requested that she be given an opportunity to respond. When plaintiff asked to see a document to which London was referring during the meeting, London refused on "advice of counsel."

Shortly afterward, London requested that corporate security investigate plaintiff's attendance record. Defendant's designated corporate representative, Barbara Ehlmann, testified in deposition that "corporate security certainly could be called upon" as one of several options for investigating employee absences. Apparently, the investigation revealed one erroneous time entry, and the result of the investigation was that London informed plaintiff in an e-mail message that she was required to adhere to standard business hours. Plaintiff replied to the message, "You still don't get it. I hope you plan to pass this message along to everyone else." Plaintiff also testified in deposition that London told other employees at the Merriam facility to monitor plaintiff's attendance and to report any discrepancies.

Plaintiff contends that these events caused her intolerable stress and forced her to resign from her employment with defendant, which she did on August 1, 1997.

After plaintiff's resignation, Brian Webster took over her job responsibilities. He was not promoted to the same level that plaintiff had achieved at the time of her resignation until after he had satisfied a "prove-in" period of nine months. Webster was promoted to plaintiff's level in April 1998.

## II. Analysis

### A. Defendant's Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court must consider the record in the light most favorable to the nonmoving party. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

#### 1. Harassment

Plaintiff claims that she was subjected to a racially hostile work environment in violation of Title VII. "To constitute actionable harassment, the conduct must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Bolden v. PRC, Inc.,* 43 F.3d 545, 550–51 (10th Cir.1994) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (further citation omitted)). For plaintiff's claims to survive summary judgment, her facts must support the inference of a racially hostile environment by demonstrating

> that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus. General harassment if not racial or sexual is not actionable. The plaintiff must show 'more than a few isolated incidents of racial enmity.' Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.

*Id.* at 551 (quoting *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399, and *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412–13 (10th Cir.1987) (further citation omitted)). The court must also look at "the totality of the circumstances, including 'the context in which the alleged incidents occurred' . . . because conduct which is not [race]-based may form a part of the context or environment in which the discriminatory conduct is alleged to have occurred." *O'Shea v. Yellow Tech. Servs.,* 185 F.3d 1093, 1096 (10th Cir.1999) (quoting *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1262 (10th Cir.1998) (further citation omitted)).

Plaintiff argues that, in addition to being subjected to Brinkley's remarks, she "was

subjected to baseless investigations and disciplinary proceedings, most of which sprang directly from Mr. Cronin and Mr. Brinkley, both of whom had demonstrated racial animus toward Ms. Watson," and she was monitored by co-employees at London's behest.

The only arguably racist remarks that plaintiff experienced during her entire tenure as an employee of defendant were those made by Brinkley on April 17, 1997. Viewing the facts in a light most favorable to plaintiff, a reasonable trier of fact could infer from those remarks that Brinkley's behavior was motivated by racial animus.

Plaintiff's assertions about Cronin are more problematic. Plaintiff claims that Cronin exhibited racial animus by requiring that minority employees at the Merriam facility be tested before promotion while promoting similarly situated non-minority employees without testing. Plaintiff also claims that she was not invited to meetings even though other similarly situated non-minority employees were invited, and that Cronin treated her with hostility while treating non-minority employees cordially. Each of plaintiff's allegations about Cronin are so vague, conclusory, and bereft of particularity, however, that they are virtually useless to the court. Plaintiff does not specify how often such instances occurred, how they effected plaintiff's ability to perform her job, or which similarly situated non-minority employees were treated preferentially. Furthermore, plaintiff does not dispute London's testimony in deposition that Cronin preferred to interact with a similarly situated African–American colleague of plaintiff rather than interact with plaintiff. The record indicates clearly that plaintiff and Cronin had problems interacting, but it does not indicate that such problems stemmed from any racial animus.

Plaintiff's argument that the disciplinary actions were without merit is undercut by uncontroverted evidence in the record that plaintiff displayed insubordination of the type to which a reasonable employer would respond with disciplinary action. Plaintiff does not controvert, for example, that in the weeks prior to the April 17, 1997 meeting, defendant received complaints about plaintiff's behavior from no less than nine employees at the Merriam facility; nor does plaintiff claim that the complaints were false [1] or motivated by racial animus.

■ Even if the court were to conclude that the meetings, the attendance investigation, Brinkley's remarks, and Cronin's behavior were unfounded and that they were motivated by racial animus, the court concludes that these events were not so severe as to create a racially hostile work environment. The events did not prevent plaintiff from doing her job; nor did they create a work environment "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Plaintiff testified in deposition that she resigned because she thought that defendant intended to terminate her, not because the environment was so permeated with racial hatred that she was unable to perform her job. The court grants summary judgment with respect to plaintiff's racial harassment claim.

### 2. Discrimination

■ Plaintiff argues that defendant violated Title VII, Section 1981, and the KAAD [2] by unfairly disciplining her and by

---

1. Plaintiff does offer two affidavits from co-workers offering general testimony that plaintiff got along well with her peers. The affiants, however, worked with plaintiff in the Lee's Summit facility, at least a year before the events in controversy in this case, and their assertions are so vague that they do not effectively undermine defendant's assertion that the complaints were legitimate.

2. Plaintiff's race discrimination claims require identical analysis under Title VII, Section 1981, and the KAAD. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Arambu-*

constructively discharging her when similarly situated non-minority employees were not disciplined or discharged. In order to establish a prima facie case, plaintiff must show that (1) she is a member of a racial minority, (2) she suffered an adverse employment action, and (3) similarly situated non-minority employees were treated differently. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir.1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If plaintiff presents a prima facie case, defendant must provide evidence suggesting a legitimate, non-discriminatory reason for plaintiff's termination, and plaintiff must provide evidence suggesting that defendant's reason is pretextual. *See id.* Plaintiff has not established a prima facie case because she has demonstrated neither that she suffered an adverse employment action nor that similarly situated non-minority employees were treated differently.

The Tenth Circuit defines the phrase "adverse employment action" liberally, and examines each claim for adverse employment action individually. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir.1998). Although actions resulting in monetary losses, termination, and demotion clearly constitute adverse employment actions, " 'a mere inconvenience or an alteration of job responsibilities' " does not. *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Rather, "conduct is an adverse employment action if it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Before plaintiff's resignation, defendant had not reduced plaintiff's re-

sponsibilities, benefits, or privileges—only plaintiff's claim of constructive discharge rises to the level of an adverse employment action.

■ "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.... The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant." *Id.* Plaintiff may have subjectively felt that she had no choice but to resign. However, as the court discussed in its analysis of plaintiff's harassment claim, she has not presented evidence from which a reasonable trier of fact could conclude that, objectively, plaintiff had no choice but to resign due to illegal discriminatory actions by defendant.

Neither has plaintiff demonstrated that similarly situated employees were treated differently. Plaintiff claims that "other employees who were considered difficult to deal with were not disciplined, but instead were left alone," but she does not name any employees, or even state whether or not they were non-minority employees. Plaintiff claims that Brian Webster was invited to meetings from which plaintiff was excluded, but plaintiff does not establish that he was similarly situated. Neither does she controvert defendant's contention that, although Webster replaced plaintiff, he was not promoted to her position for nine months after she resigned. Finally, plaintiff claims that "employees who confronted their supervisors and walked away from conversations with them were not subject to discipline." Plaintiff specifies only one such instance, however, which occurred several years earlier, at a different facility, and under different circumstances. In order to survive summary judgment, plaintiff must "set forth specific

*ru v. Boeing Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir.1997); *Woods v. Midwest Conveyor Co., Inc.,* 231 Kan. 763, 648 P.2d 234, 239 (1982) ("We accept and embrace the rules

stated [by the Supreme Court] as to burden of proof, prima facie case and burden of going forward with the evidence in discrimination cases.").

facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to her disparate treatment discrimination claim, she has not done so. The court grants summary judgment with respect to plaintiff's discrimination claim.

### 3. Retaliation

■ Plaintiff claims that, after she filed discrimination complaints with defendant, the EEOC, and the KHRC, defendant retaliated against her by unfairly investigating plaintiff's absences, continuing to accuse plaintiff of insubordination and other misconduct without adequate basis, and constructively discharging plaintiff by creating a racially hostile work environment. To present a prima facie case of retaliation, plaintiff must prove that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the employment action. See Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir.1993). "In the absence of any direct proof of a causal connection, the plaintiff can create an inference of a causal connection from the temporal proximity of the events. An inference based on timing can only be made, however, where close temporal proximity exists between the bringing of the charges and the subsequent adverse action." Freeman v. Burlington N. & Santa Fe Ry., 47 F.Supp.2d 1308, 1313 (D.Kan.1999) (quoting Candelaria v. EG & G Energy Measurements, Inc., 33 F.3d 1259, 1262 (10th Cir.1994) (further citation omitted)). The court then must evaluate plaintiff's claims according to the McDonnell Douglas burden-shifting framework. See id.

■ Plaintiff engaged in protected activity when she filed her complaints around the beginning of June 1997. Because the second meeting, the attendance investigation, and London's alleged instructions to watch plaintiff each came within a few weeks of plaintiff's filings, the events support the inference of a causal connection between these events and plaintiff's protected activity. See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir.

1999). However, even if the court infers that defendant's actions were motivated by retaliatory animus, the court finds that the actions did not affect plaintiff's responsibilities, benefits, or compensation, and the court has already concluded that plaintiff was not constructively discharged. Thus, her resignation does not constitute an adverse employment action. At most, defendant issued plaintiff a written warning that effectively placed her on probation and required plaintiff to adhere to "standard business hours." Such actions were not so egregious that they altered the terms and conditions of plaintiff's employment. See Smith v. Board of Pub. Utils., 38 F.Supp.2d 1272, 1289 n. 8 (D.Kan.1999). The court grants summary judgment with respect to plaintiff's retaliation claim.

### 4. Punitive Damages

In light of the court's conclusion that plaintiff has not created a genuine issue of material fact as to her claims of racial harassment, discrimination, and retaliation, the court grants summary judgment with respect to plaintiff's claim for punitive damages. Defendant can hardly have discriminated against plaintiff with the requisite "malice or reckless indifference to plaintiff's federally protected rights" if its actions did not amount to an adverse employment action. Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (quoting 42 U.S.C. § 1981a(b)(1)). The court grants defendant's motion for summary judgment with respect to plaintiff's punitive damages claim.

### B. Plaintiff's Motion to Compel Discovery and Defendant's Motion for Protective Order

Plaintiff urges the court to compel defendant to respond to interrogatories relating to plaintiff's employment history and work performance, defendant's decisions on disciplinary action against plaintiff, defendant's alleged termination of plaintiff's employment, defendant's investigation of plaintiff's complaints of racial harassment

or discrimination, and any other complaints of racial harassment or discrimination at the Merriam facility. Defendant responds that plaintiff's requests, which plaintiff made pursuant to Fed.R.Civ.P. 30(b)(6), either are lacking in sufficient particularity, are irrelevant, or violate defendant's attorney-client and work product privileges.

Plaintiff argues that she is entitled to obtain discovery on those topics because it may show that defendant was planning to terminate plaintiff, and that Cronin and other employees at the Merriam facility acted with discriminatory bias. The court disagrees. Additional discovery on those topics will not shed more light on plaintiff's experience, either subjectively or objectively, as an employee of defendant. The court has evaluated plaintiff's experience and defendant's actions as plaintiff herself describes them. After careful consideration of the effect that plaintiff's experience and defendant's actions had on the terms and conditions of plaintiff's employment, the court has concluded that plaintiff was not subjected to any adverse employment action.

For this reason, the court concludes that such additional discovery would be superfluous. The court denies plaintiff's motion to compel discovery and denies as moot defendant's motion for protective order.

### C. Defendant's Motion to Strike Affidavits

In evaluating defendant's motion for summary judgment, the court has considered the affidavits plaintiff included with her response. The affidavits do not present evidence sufficient to change the court's decision. The court denies as moot defendant's motion to strike affidavits.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 52) is granted.

IT IS FURTHER BY THE COURT ORDERED that plaintiff's motion to compel discovery (Doc. 51) is denied, and defendant's motions for protective order

(Doc. 40) and to strike affidavits (Doc. 60) are denied as moot.

The case is closed.

Copies of this order shall be mailed to counsel of record.

**IT IS SO ORDERED.**