Ted TUNGOL, Plaintiff,

v.

CERTAINTEED CORPORATION,
Defendant.

No. CIV.A. 00–2511–JAR.

United States District Court,
D. Kansas.

April 16, 2002.

Karen R. Glickstein, Shughart, Thomson & Kilroy, P.C., W. James Foland, Patricia A. Mullins, Foland & Wickens, P.C., Kansas City, MO, for Plaintiff.

John R. Phillips, Julianne Popper, Blackwell Sanderss Peper Martin LLP, Kansas City, MO, for Defendant.

## MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBINSON, District Judge.

Plaintiff Ted Tungol, a fifty-six-year-old Asian male of Filipino national origin, filed suit against defendant CertainTeed, his current employer, alleging discrimination

on the basis of race and national origin in violation of Title VII, discrimination on the basis of race in violation of 42 U.S.C. sec.1981, discrimination on the basis of age in violation of the ADEA and failure to promote and retaliation in violation of Title VII, sec.1981 and the ADEA. This matter is presently before the Court on defendant's motion for summary judgment (Doc. 42). As set forth in a telephone conference conducted April 11, 2002, CertainTeed's motion is granted in part and denied in part. The purpose of this memorandum order is to memorialize the rulings made by the court during the telephone conference.

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[2] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[3]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[4] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[5] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[6] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[7] The court must consider the record in the light most favorable to the nonmoving party.[8]

## II. Factual Background

The Court's understanding of the facts has been complicated by the manner in which plaintiff has presented his opposition to CertainTeed's motion for summary judgment. D.Kan. Rule 56.1 provides in relevant part:

A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relied, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the state-

1. Fed.R.Civ.P. 56(c).

2. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. *Id.* at 251–52, 106 S.Ct. 2505.

4. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

6. *Id.*

7. *See id.*

8. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

ment of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of the opposing party.

Plaintiff has not consistently complied with Rule 56.1. Plaintiff does not consistently refer with particularity to those portions of the record upon which he relies. In responding to CertainTeed's statement of undisputed facts, he does not first state CertainTeed's numbered paragraph, then his response, to facilitate comparison. Further, plaintiff does not specifically set forth in detail the reasons why he cannot truthfully admit or deny particular matters, and he does not fairly meet the substance of the matters asserted.

In finding that the following facts are undisputed, the Court disregards all facts not set forth in compliance with D. Kan. Rule 56.1. The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to plaintiff's case. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff, a fifty-six year old Asian male of Filipino national origin, has worked for CertainTeed for 23 years. Plaintiff was hired as a Design Draftsman in 1979 and was promoted several times: to designer in 1980; to the positions of Project Engineer I and II in 1982 and 1984, respectively; and to Senior Project Engineer in 1994. Plaintiff has been in his current position as a Senior Process Engineer since his transfer effective May 1, 1999.

As a Senior Project Engineer, Plaintiff was responsible for engineering design and management of projects at CertainTeed's Kansas City plant. As a Senior Process Engineer, plaintiff is responsible for making sure certain processes in the plant are running efficiently.

CertainTeed's performance evaluation rating scale is as follows: "1"—needs im-

provement; "2"—learning; "3"—meets expectations; "4"—exceeds expectations; "5"—outstanding. A "3" rating is appropriate for an employee "who handles the position responsibilities at a level beyond the expectations of the job requirements. Solid, steady performer who needs minimal supervision... " A "2" rating is appropriate for an employee who "[is] not yet fully meeting the job requirements, who [is] relatively new in the position and [is] still in the leaning process requiring supervision. This category may also be used for the employee who may not quite fully have met the expectations of the position this past year."

In February 1997, plaintiff received his evaluation for his 1996 work performance from his supervisor, Dan Fritts, who had recommended plaintiff for promotion to Senior Project Engineer in 1994. The review was also signed by Plant Manager Jim Zalaznik. The 1996 review gave plaintiff an overall rating of "3" or "meets expectations." In the review, Fritts stated that plaintiff needed to show more initiative in identifying problems; to work harder at meeting project schedules and focus on deadlines; to work closer with the other engineers on common projects; and to communicate more often in meetings as well as with customers.

Plaintiff received an overall rating of "3" in February 1998 for his 1997 work performance. Eric Schramm was plaintiff's supervisor. The review had similar comments on plaintiff's performance, including the need to work on being more assertive in his oral communication in meetings and with contractors, and the need to work on meeting schedules set for projects. Plaintiff received a 3% salary increase based on his 1997 review.

In 1996, CertainTeed approved a $250 million capital investment in the "K–21 Project", which added a new fiberglass

production line, the largest in North America. Construction on the K–21 line began in October 1996, and was divided into interdependent phases. K–21 changed the environment of the plant and all employees and the facility were "in the spotlight." Plaintiff's first K–21 project was overseeing the K–11 line's Asphalt System Replacement.

In October 1998, plaintiff received a quarterly review from Eric Schramm that raised concerns about plaintiff's K–21 projects. The review stated that plaintiff needed to take greater care in defining the details and operational impact of his project prior to developing a scope, and that he should be more aggressive with project management and provide his contacts with a clear definition of what their tasks were.

In February of 1999, plaintiff received a "2" or "learning" rating from his supervisor Eric Schramm on his annual performance review for his 1998 work performance. The review noted that plaintiff needed to take time when giving oral directions to peers and contractors and to make sure that all parties understood his verbal directions; that plaintiff needed to concentrate on meeting schedules and documenting them in writing; that plaintiff needed to be more proactive in searching out problems; that plaintiff's main K–21 project was over budget and had storage capacity problems; that plaintiff seldom contributed to group discussions; and that contractors had problems following plaintiff's directions, resulting in many field changes or corrections. Plaintiff received a lump sum payment equal to 2% of his annual salary.

Plaintiff took issue with the 1998 review and sent a detailed memo to Eric Schramm and other members of management dated March 26, 1999, alleging that his 1998 performance review was based on national origin discrimination. Schramm responded to plaintiff's memo on July 15,

1999, denying that the review was motivated by prejudice based on plaintiff's national origin.

In early 1999, it was decided plaintiff should be transferred to process engineering because he was not meeting the expectations of Eric Schramm and because he had knowledge of the mechanical process used in the plant. The three remaining project engineers were Caucasian, American-born males over the age of 40.

Jim Zalaznik communicated the decision to transfer plaintiff to the Senior Process Engineer position in a memo to his management team dated March 1, 1999. The memo stated that management would not inform plaintiff of the transfer until completion of the K–21 project.

Effective May 1, 1999, plaintiff was transferred to a process engineer position and his title was changed to Senior Process Engineer. Plaintiff's salary and benefits did not change as a result. Brett Ostrowski became plaintiff's supervisor.

On June 3, 1999, plaintiff filed a charge of discrimination with the EEOC alleging age, race and national origin discrimination and retaliation based on his 1998 performance evaluation and the transfer to process engineering as well as failure to promote plaintiff in May 1999.

In July of 1999, a union employee filed a grievance alleging that plaintiff was performing manual labor in his position as Senior Process Engineer. Brett Ostrowski told plaintiff not to perform manual labor, documenting his expectations of plaintiff in a memo dated August 10, 1999.

On August 9, 1999, plaintiff filed a charge of discrimination with the EEOC and the KHRC alleging age, race and national origin discrimination and retaliation, based on the same set of facts as the June 3, 1999 charge.

In February 2000, plaintiff received a rating of "2" or "learning" on his annual

performance review for 1999 from Brett Ostrowski. The "2" rating was based on the fact that plaintiff had been a Senior Process Engineer for less than one year and was still learning the job as well as Ostrowski's knowledge that plaintiff was still dealing with invoices relating to projects he handled as a project engineer and which should have been resolved. The review stated that plaintiff needed to focus on completing objectives in a timely manner; to work on communications outside the department; and to take a more active role in plant operating discussions. Plaintiff again received a lump sum payment equal to 2% of his annual salary.

CertainTeed makes job vacancies known to employees through an intranet website, by posting at each facility and by a toll free number. In November 1998, a position for "Senior Principal Project Engineer" was posted. Although located at the KCK facility, the position was funded by and reported to CertainTeed's corporate engineering group in Pennsylvania. This position was two levels higher than plaintiff's former position. Plaintiff did not apply for this position, which was filled by a Caucasian, American-born male under age 40 in May of 1999.

On May 16, 2000, plaintiff applied for a promotion to the position of "Principal Project Engineer." Plaintiff was not considered eligible for this position because he had received a "2" rating on his 1999 performance review. In October 2000, the position was filled by a Caucasian, American-born male under age 40.

Additional facts may appear in this opinion as they pertain to plaintiff's particular claims.

## III. Discussion

### A. Title VII and ADEA Exhaustion Requirement

Plaintiff's Title VII and ADEA discrimination claims are subject to an exhaustion requirement; before bringing a Title VII or ADEA action, a plaintiff must exhaust his or her administrative remedies.[9] By contrast, 42 U.S.C. sec.1981 does not contain an exhaustion requirement. Specifically, a plaintiff must file an administrative charge with the EEOC. The purpose of this prerequisite is to ensure that employers have notice of the charges and to provide employers with an opportunity to voluntarily alter any illegal behavior.[10]

After a plaintiff has complied with this administrative requirement, he or she may file suit. "The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge." [11] However, courts will disregard allegations not "reasonably related" to the listed allegations; to allow consideration " 'would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party [of] notice of the charge.' ".[12] "[C]onsideration

---

9. 42 U.S.C. sec.2000e–5(e); 29 U.S.C. sec. 626(d); *see Aramburu v. Boeing Co.,* 112 F.3d 1398, 1411 (10th Cir.1997) (Title VII) (citing *Jones v. Runyon,* 91 F.3d 1398, 1400 (10th Cir.1996), *cert. denied* 520 U.S. 1115, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997)); *Smith v. Board of County Comm'rs of Johnson County, Kan.,* 96 F.Supp.2d 1177, 1185 (D.Kan.2000) (ADEA).

10. *See Aguirre v. McCaw RCC Communications, Inc.,* 923 F.Supp. 1431, 1433 (D.Kan. 1996).

11. *Aramburu,* 112 F.3d at 1411 (citing *Brown v. Hartshorne Public School. Dist.No. 1,* 864 F.2d 680, 682 (10th Cir.1988)).

12. *Smith v. Board of Public Utilities,* 38 F.Supp.2d 1272, 1284 (D.Kan.1999) (quoting *Harrell v. Spangler, Inc.,* 957 F.Supp. 1215,

of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made." [13] An act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a subsequent EEOC complaint.[14]

In this case, plaintiff filed his administrative charges on June 3 and August 9, 1999. The charges alleged age, race and national origin discrimination and retaliation based on the 1998 performance evaluation and the transfer to process engineering. Both charges predate plaintiff's 1999 performance review given in February 2000 and his application for the Principal Project Engineer position in May 2000.

■ Plaintiff's two EEOC complaints did not specifically refer to a failure to promote claim, but rather, made the general statement that he had recently learned that a younger, Caucasian male had been hired as a Project Engineer and that he could not apply for the position because he did not know it was available. Plaintiff now claims that in May 2000, he applied for and was denied another position at CertainTeed, specifically, the Principal Project Engineer position.

The Court finds that it has jurisdiction under Title VII and the ADEA over plaintiff's 1999 failure to promote claim for the Senior Principal Project Engineer position

as set forth in his EEOC complaint. Plaintiff's 2000 failure to promote claim for the Principal Project Engineer position is not "reasonably related" to the allegations made in his two formal complaints such that CertainTeed could anticipate that plaintiff might bring suit regarding those claims, particularly in light of the fact that he admittedly did not apply for the first position. Further, plaintiff's suggestion that the alleged discriminatory acts were committed pursuant to a "pattern" of discrimination is without factual basis. Because plaintiff only exhausted his administrative remedies with respect to Senior Principal Project Engineer position, the Court will not consider his other 2000 failure to promote claim under Title VII or the ADEA.[15]

■ The same rationale applies to plaintiff's 1999 performance evaluation. The 1998 and 1999 evaluations were made by different supervisors for different positions and are not reasonably related for purposes of satisfying the administrative exhaustion requirement.

Thus, plaintiff's discrimination claims under Title VII and the ADEA are limited to those set forth in his EEOC claims: the 1998 performance evaluation, the transfer to process engineering and the 1999 failure to promote. Because sec.1981 does not have the same exhaustion requirements as Title VII and the ADEA, however, the plaintiff may proceed on his race claims regarding the 2000 failure to promote and the 1999 performance evaluation claims under sec.1981.[16] Plaintiff may also proceed under Title VII, the ADEA and sec. 1981 on each of his retaliation claims.[17]

1219 (D.Kan.1997)) (internal quotation marks and citation omitted).

**13.** *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir.1993).

**14.** *Ingels v. Thiokol Corp.*, 42 F.3d 616, 624–25 (10th Cir.1994) (citations and quotations omitted).

**15.** *See Brazill v. Gober*, 2001 WL 135833, *4 (D.Kan.2001).

**16.** Plaintiff may not bring a claim for national origin discrimination pursuant to sec.1981. *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Rawlins–Roa v. United Way of Wyandotte County*, 977 F.Supp. 1101 (D.Kan.1997).

**17.** *Ingels*, 42 F.3d at 624–25.

## B. Discrimination Claims

Plaintiff claims that CertainTeed discriminated against him on the basis of his national origin, race and age by providing him with negative performance evaluations, demoting him to process engineer, and by failure to promote.

In considering a disparate treatment claim, the court is bound by the framework set out in *McDonnell Douglas Corp. v. Green.*[18] *McDonnell–Douglas* provides a three-step, burden-shifting process by which to evaluate a plaintiff's claims. First, a plaintiff must establish a prima facie case of discrimination.[19] Once a plaintiff establishes a prima facie case, the burden shifts to the defendant, who must offer a legitimate reason for the adverse action.[20] Finally, if the defendant offers a legitimate reason, the burden returns to the plaintiff, who must establish "a genuine dispute of material fact as to whether [defendant's] proffered reason for the challenged action is pretextual-i.e. unworthy of belief."[21]

To state a prima facie case of discrimination under Title VII, sec.1981 or the ADEA, a plaintiff must show: (1) he was a member of a protected class; (2) he experienced adverse employment action; and (3) similarly situated non-minorities were treated more favorably.[22]

The burden imposed on a plaintiff at the prima facie stage is "not onerous."[23] At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant.[24] The Tenth Circuit has held that a defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual.[25]

A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false . . .; (2) with evidence that the defendant acted contrary to written company policy prescribing the action to be taken by the defendant under the circumstances . . .; or (3) with evidence that the defendant acted contrary to company practice when making the adverse employment decision affecting the plaintiff.

---

18. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff's claims of age, race and national origin discrimination and retaliation under the ADEA, title VII and 42 U.S.C. sec. 1981 are all analyzed under the *McDonnell Douglas* framework. *See Amro v. Boeing Co.,* 232 F.3d 790 (10th Cir.2000) (Title VII, sec. 1981 discrimination and retaliation); *Sanchez v. Denver Public Schools,* 164 F.3d 527 (10th Cir.1998) (ADEA, Title VII); *Shinwari v. Raytheon Aircraft Co.,* 16 F.Supp.2d 1308 (D.Kan. 1998) (ADEA and Title VII retaliation).

19. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

20. *See id.*

21. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995).

22. *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1315–16 (10th Cir.1999); *Watson v. Lucent Technologies, Inc.,* 92 F.Supp.2d 1129, 1135 (D.Kan.2000).

23. *Id.* at 1137 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

24. *See MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1119 (10th Cir. 1991).

25. *EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1193 (10th Cir.2000) (citing *MacDonald v. Eastern Wyoming Mental Health Ctr.,* 941 F.2d 1115, 1119 (10th Cir. 1991)).

If the plaintiff can establish a prima facie case and present sufficient evidence of pretext, then his claim survives summary judgment. There is no dispute that plaintiff is a member of a protected class: he is an Asian of Filipino origin who is over the age of 40. With these standards in mind, the Court will discuss each of plaintiff's discrimination claims.

**1. 1998 performance evaluation (Title VII, ADEA and sec.1981) and 1999 performance evaluation (sec.1981 only)**

**a. prima facie case**

**i) do the reviews constitute "adverse employment action?"**

■ Generally, conduct qualifies as an adverse employment action if it "constitutes a significant change in [the plaintiff's] employment status."[26] The Tenth Circuit liberally defines "adverse employment action."[27] Specifically, the circuit has declined to adopt a "materiality" requirement and, rather, takes a "case by case approach" to determining whether a given employment action is "adverse."[28]

The circuit has held, albeit in an unpublished opinion, that negative performance evaluations can constitute adverse employment action in certain circumstances.[29] The circuit held that the plaintiff suffered an adverse employment action for purposes of her Title VII retaliation claim when she received negative performance evaluations that ultimately resulted in her discharge. In other words, because those performance evaluations had an "adverse impact on [plaintiff's] future employment opportunities," they were sufficient to constitute adverse employment actions.[30]

In this case, plaintiff's 1998 evaluation resulted in his transfer to Senior Process Engineer, which he claims was a demotion, and his 1999 evaluation ultimately affected his eligibility for promotion. The Court finds that, under the Tenth Circuit's liberal definition, the 1998 and 1999 performance evaluations constitute adverse employment action.

**ii) is there evidence that similarly situated non-minorities were treated differently?**

■ It is plaintiff's burden to produce evidence that he was treated unfairly by showing that similarly situated non-minorities were treated better. Plaintiff argues that his allegations that he was the only employee who received meritless negative performance ratings create an inference for purposes of the summary judgment motion. It appears to the Court that in this case, plaintiff has been put in the position of proving a negative, that is, that similarly situated non-minority employees received meritless positive evaluations.

The Court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion.[31] Although not set forth in its statement of uncontroverted facts, CertainTeed produces evidence that Jim Eason, another Senior Project Engineer who was Caucasian, American-

---

**26.** *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

**27.** *See Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (10th Cir.1998).

**28.** *See id.*

**29.** *See Toth v. Gates Rubber Co.*, 216 F.3d 1088 (10th Cir.2000).

**30.** *See Lee v. New Mexico State University Bd. of Regents*, 102 F.Supp.2d 1265, 1276 (D.N.M.,2000) (Unfair, negative performance reviews that form the basis of removal of job responsibilities, demotion, trainer or termination are sufficient to satisfy an adverse employment action)

**31.** *Downes v. Beach*, 587 F.2d 469, 471 (10th Cir.1978).

born and eight years younger than plaintiff, also received a "2" rating from Eric Schramm on his 1998 work performance. It is uncontroverted, however, that Eason retained his position as Senior Project Engineer and was not transferred as a result of his evaluation as was plaintiff. Drawing all reasonable inferences in favor of the non-moving party, the Court holds that plaintiff has satisfied this element of his prima facie case by raising an inference of discrimination as to his 1998 performance evaluation. Further, although there is no similar evidence regarding the 1999 performance evaluation, the Court will apply the same rationale in holding that plaintiff has stated a prima facie case with respect to the 1999 evaluation as well. As noted above, plaintiff cannot prove a negative, and the Court will draw all reasonable inferences in his favor.

### b. legitimate reason

■ Because the Court finds that plaintiff has stated a prima facie case; the burden shifts to CertainTeed to produce evidence that it took the adverse employment action for a legitimate nondiscriminatory reason. Here, CertainTeed has met this relatively light burden by stating that the reason for the "2" ratings was plaintiff's work performance.

### c. pretext

■ Because CertainTeed has met its burden, the presumption of discrimination drops from the case and plaintiff must establish by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." [32]

Plaintiff claims that some of the criticisms Schramm and Ostrowski made about him in his evaluations were based on areas of work that were not his responsibility and were fabricated. Plaintiff also cites Schramm's alleged history of directing racial epithets to him as evidence that the performance review was not credible.

Plaintiff contends that in the early 1990's, Schramm, who was not his supervisor at the time, referred to him as a "dumb Filipino." The Court concludes that the comment is nothing more than a "stray remark." While race or national origin-related comments made by a decision maker may support an inference of discrimination, "isolated or ambiguous comments" may not support such an inference.[33] "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." [34] Here, the one racial comment allegedly made by Schramm was made over ten years ago. "A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the [defendant's] termination decision, and therefore 'that age [or national origin or race] actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome.'" [35]

CertainTeed argues that plaintiff cannot show pretext. First, both reviews contain positive as well as critical comments concerning plaintiff's work performance. Second, the comments echo those made in prior evaluations. Third, given that Schramm had given plaintiff a "3" rating in 1997, there can be no basis for inferring that the 1998 review was discriminatory

---

**32.** *Aramburu,* 112 F.3d at 1403.

**33.** *See Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1140 (10th Cir.), *cert. denied* 531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 125 (2000) (citation omitted).

**34.** *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (citation omitted).

**35.** *Stone,* 210 F.3d at 1140 (citations omitted).

rather than based on the legitimate performance issues that arose during the course of the year and which are specifically identified in the review. CertainTeed contends that plaintiff's discrimination claims are based solely on his own subjective evaluations of his work performance, and such "self-appraisal" is insufficient to support his claims.

It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.[36] A change in management's evaluation of employee performance does not by itself raise an inference of pretext.[37] "To hold otherwise would be to hold that things never change, a proposition clearly without a basis in reality." [38] An employer is entitled to change its evaluation of an employee over time. Further, although plaintiff's prior evaluations were generally positive, he did receive a number of critical remarks.

Plaintiff has, however, presented a genuine issue of material fact as to whether the negative comments regarding his "communication skills" were based on his foreign accent. A foreign accent that does not interfere with a plaintiff's ability to perform duties of the position is not a legitimate justification for adverse employment decisions.[39] Based on this evidence, a reasonable jury could find that defendant's offered reason for plaintiff's negative performance evaluation, is pretextual, and summary judgment is denied.

## 2. transfer to process engineering

### a. prima facie case

#### i) was transfer an adverse employment action?

■ CertainTeed contends that plaintiff's transfer from Senior Project to Senior Process Engineer in May 1999 was not a demotion. It is uncontroverted that plaintiff's salary and benefits did not change as a result of his reassignment to the process engineer position. Plaintiff argues that at CertainTeed, a transfer from a project to process engineer is a demotion because the reassignment decreased his responsibilities, included manual labor and constituted a significant drop in prestige. There is also controverted evidence regarding the circumstances under which plaintiff was performing manual labor.

The Court finds that the question of whether plaintiff's transfer to process engineering was a demotion is a genuine issue of material fact. While recognizing that plaintiff's subjective feelings concerning his change in responsibilities is not relevant, plaintiff has presented evidence that the transfer to process engineering constitutes a "significant change in [his] employment status." [40] Accordingly, the Court finds that, under the Tenth Circuit's liberal definition, the transfer constitutes adverse employment action.

#### ii) was plaintiff treated differently?

■ It is uncontroverted that three Senior Project Engineers remained in

---

**36.** *Furr v. Seagate Technology, Inc.,* 82 F.3d 980, 988 (10th Cir.1996), *cert. denied* 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997); *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988).

**37.** *See Valdivia v. University of Kansas Medical Center,* 24 F.Supp.2d 1169, 1174 (D.Kan. 1998).

**38.** *Shabat v. Blue Cross Blue Shield,* 925 F.Supp. 977, 988 (W.D.N.Y.1996) (internal quotations and citation omitted), *aff'd,* 108 F.3d 1370 (2d Cir.1997).

**39.** *See Carino v. University of Oklahoma Board of Regents,* 750 F.2d 815 (10th Cir.1984).

**40.** *See Jeffries v. State of Kansas,* 147 F.3d at 1232.

their positions when plaintiff was transferred to process engineering. All three were Caucasian and American-born. The Court finds that plaintiff has satisfied this prong of his prima facie case.

#### b. legitimate reason

██ CertainTeed alleges that, as a result of the completion of the K–21 line's construction, the plant's needs with regard to project engineers changed. Eight salaried employees, excluding plaintiff, with roles relating to the K–21 project were transferred and/or affected by the completion of the K–21 and all of those employees were Caucasian, and American-born; CertainTeed does not offer evidence of the age of these employees. CertainTeed contends that the decision to transfer plaintiff was driven by the decreasing need for project engineers at the plant and was an effort to save his job. Plaintiff was transferred because he had some knowledge of the mechanical processes in the plant and also because he was not meeting the expectations of his supervisor, Eric Shramm; because he lacked the specific engineering skills held by other project engineers, it was decided he should be transferred to the process engineer position. The Court finds that CertainTeed has met its burden.

#### c. pretext

██ Plaintiff contends that CertainTeed's reason for transfer is pretextual for the same reasons he proffers the performance evaluations were pretextual. Plaintiff also argues CertainTeed's reasons for the transfer are pretext because it hired two additional project engineers in 1999 and 2000. Plaintiff also makes much of the fact that he was "forced" to engage in manual labor for three months.

CertainTeed responds that the project engineer hired in 1999 was a "Senior Prin-

cipal" Project Engineer, a promotion two levels higher than plaintiff's "senior" project engineer position and was a corporate, not a Kansas City plant hiring decision. The Principal Project Engineer position filled in May 2000 was one level higher than plaintiff's former position.

CertainTeed's reason for transferring plaintiff is somewhat contradictory: on the one hand, it argues that plaintiff's transfer to process engineer was not a demotion; on the other hand, the transfer compromised plaintiff's eligibility for promotion to the Principal Project Engineer position, supra; although he had been a project engineer for six years, his transfer to process engineer, and being on that job for less that a year, rendered him ineligible for promotion. Accordingly, the Court finds that a reasonable jury could find that CertainTeed's offered reason for plaintiff's transfer is pretextual, and summary judgment is denied.

### C. Failure to promote claims (1999 claim under Title VII, ADEA and sec.1981; 2000 claim under sec. 1981 only)

**1. Prima facie case:** To state a claim for discriminatory failure to promote, a plaintiff must show that he: (1) is in a protected class; (2) applied for and was qualified for the position at issue; (3) was not selected for the position for which he applied; and (4) that the position remained open or was filled by a person outside the protected class.[41]

#### a. May 1999

██ It is uncontroverted that plaintiff did not apply for the position of Senior Principal Project Engineer in May 1999. The position was posted in November of

---

**41.** *Amro v. Boeing Co.,* 232 F.3d 790 (D. Kan 2000) (Title VII, sec.1981); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537 (10th Cir. 1987) (ADEA).

1998 at plant locations and on a company-wide website. Plaintiff was aware of defendant's posting policy and periodically checked the listings.

Plaintiff submits that, because he was told by Zalaznik that the reason for his transfer was decreased need for project engineers, he did not look at the postings for project engineers and that he was misled into believing there were no jobs available. In failure to promote cases, nonapplicant plaintiffs can successfully establish the application element in cases where the employer improperly failed to notify the plaintiff of promotional opportunities or in cases involving employer impropriety.[42] That is not the case here.

Although CertainTeed denies that Zalaznik made the statement, it is uncontroverted that the Kansas City plant was not hiring project engineers of plaintiff's level in April of 1999, the time of plaintiff's transfer. It is uncontroverted that the Senior Principal Project Engineer position filled in May of 1999 was a corporate engineering position and reported to the group in Blue Bell, Pennsylvania and that this position was two levels higher than the project engineer position plaintiff held prior to his transfer. There is also a six month gap between when the position was posted (November 1998) and when plaintiff was allegedly told there were no project engineer positions. Plaintiff has failed to offer any reason for failing to apply before that time. Further, plaintiff has not controverted the fact that CertainTeed has policies for posting and applying for positions.

Because plaintiff did not apply for the position, the Court grants summary judgment on this claim.

**b. May 2000**

■ It is uncontroverted that plaintiff applied for the position of Principal Project Engineer in May 2000; he was deemed ineligible and the position was filled by a Caucasian, American-born male under the age of 40.

CertainTeed submits that plaintiff cannot show that he was qualified for the position. It is CertainTeed's policy and practice that in order to be eligible for promotion, an employee must be in his position for at least one year and his performance on the current job must warrant consideration for the advancement. Plaintiff was ineligible for the promotion because of his "2" rating and because he had been in his job less than one year at the time of the review.

The Court finds that plaintiff has stated a prima facie case. Although his transfer to process engineer rendered him ineligible for the promotion based on his being in the position less than one year, there is a genuine issue of material fact regarding whether plaintiff was qualified when he had been a Senior Project Engineer for over six years immediately prior to that time.

**2. legitimate reason**

■ CertainTeed's proffered reason for not promoting plaintiff to the Principal Project Engineer position is that he was ineligible for promotion because of his "2" rating on his performance evaluation as well as the fact that he had been on the job for less than one year.

**3. pretext**

■ The Court finds that a reasonable jury could find CertainTeed's proffered reason for not promoting plaintiff is pretextual. CertainTeed argues that plain-

---

**42.** *See Carino v. University of Okla. Bd. of Regents,* 750 F.2d at 815.

tiff's transfer was not a demotion, yet contends his limited tenure as a process engineer rendered plaintiff ineligible for promotion to the Principal Project Engineer position in spite of the fact that he had held the position of "Senior Project Engineer" for over six years. Accordingly, summary judgment on this claim is denied.

### D. Retaliation Claims (Title VII, ADEA and sec.1981)

Plaintiff claims that he was demoted, received negative performance violations and was denied promotion in violation of Title VII, ADEA and sec.1981 in retaliation for his complaining of discrimination. The *McDonnell Douglas* framework is also used to evaluate retaliation claims.[43] "A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action."[44] A plaintiff can establish the causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[45] A retaliation claim does not require that the plaintiff prevail on the underlying discrimination claim.[46]

#### 1. The transfer to process engineering

■ It is uncontroverted that Jim Zalaznik memorialized the decision to trans-

fer plaintiff to the Senior Process Engineer position in a memo to management dated March 1, 1999. Plaintiff's first complaint of discrimination was his March 26, 1999 written response to his 1998 annual performance review. Plaintiff's administrative charges were filed on June 3 and August 9, 1999. Thus, the decision to transfer plaintiff predated his protected opposition to discrimination and he cannot show that the decision to transfer him was retaliatory. Summary judgment is granted on this claim.

#### 2. 1999 performance evaluation [47]

■ Plaintiff's 1999 performance evaluation was presented to him in February 2000, approximately six months after his latter charge of discrimination was filed August 9, 1999. The Tenth Circuit has held that a lapse of three months between the protected activity and the employer's action is too long a period of time to allow an inference of causation.[48] Here, the Court finds that the six month period between plaintiff's administrative charge and the negative performance evaluation is insufficient to support an inference of retaliation. Summary judgment is granted on this claim.

#### 3. Failure to promote

#### a. 1999 promotion

■ The Court finds that failure to promote plaintiff to the Senior Principal Project Engineer position, which had been

---

**43.** *See, e.g., Lundien v. United Airlines,* 242 F.3d 389 (10th Cir.2000).

**44.** *See Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1234 (10th Cir.2000).

**45.** *Burrus,* 683 F.2d at 343.

**46.** *See Robbins v. Jefferson County School Dist.,* 186 F.3d 1253, 1258 (10th Cir.1999) (quotation omitted).

**47.** Plaintiff's 1998 performance evaluation predates plaintiff's allegations of discrimination in his March 26, 1999 memo.

**48.** *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997).

posted for five months prior to his transfer, cannot be retaliatory because plaintiff did not apply for the job.[49]  Summary judgment is granted on this claim.

#### b.  2000 promotion

▮▮  Plaintiff's latter EEOC complaint was made in August 1999.  The promotion was denied nine months later in May 2000.  CertainTeed concedes for purposes of its summary judgment motion that plaintiff can state a prima facie case of retaliation with regard to the May 2000 failure to promote claim.[50]  For the reasons set forth above at pp. 21–23, the Court finds that a reasonable jury could find that Certain-Teed's proffered reason for not promoting plaintiff is pretextual and summary judgment is denied on this claim.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment against plaintiff Tungol (Doc. # 42) be and hereby is GRANTED with respect to the following issues/claims:

1.  Failure to exhaust Title VII and ADEA administrative remedies with respect to plaintiff's 1999 performance evaluation and 2000 failure to promote discrimination claims;

2.  Plaintiff's 1999 failure to promote discrimination claim;

3.  Plaintiff's retaliation claims based on the transfer to process engineering, the 1999 failure to promote and the 1999 performance evaluation.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is DENIED with respect to the following discrimination claims:

1.  1998 performance evaluation (Title VII, ADEA and sec.1981);

2.  1999 transfer (Title VII, ADEA and sec.1981);

3.  1999 performance evaluation (sec. 1981 only);

4.  2000 failure to promote (sec.1981 only).

IT IS FURTHER ORDERED that defendant's motion for summary judgment is DENIED with respect to plaintiff's retaliation claim based on the May 2000 failure to promote.

IT IS SO ORDERED.

---

**49.**  *See discussion pp. 1201–02, supra.*

**50.**  At the time of the telephone conference held April 11, 2002, the Court overlooked the fact that CertainTeed had conceded that plaintiff had stated a prima facie case on the 2000 failure to promote claim when it announced its decision to grant summary judgment.  The Court exercises its discretion to change its ruling in this memorandum order.